UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )  )  v.                                                   )   CRIMINAL NO. 04-10236-NG  )  GREGORIO MELO-MEDINA              )  ) | |

MOTION TO DISMISS INDICTMENT WITH PREJUDICE

I. FACTS

Gregorio Melo-Medina immigrated to the United States from the Dominican Republic in 1983 (R.A. 1).[1] In June, 1993, in the United States District Court, District of Massachusetts, he was convicted of conspiracy to distribute heroin, distribution of heroin and aiding and abetting, and was sentenced to sixty months (R.A. 2-4). In August, 1996, after serving that sentence, he was deported to the Dominican Republic (R.A. 5).

On August 3, 2001, Mr. Melo-Medina was arrested by the Boston Police and charged with Possession with Intent to Distribute Cocaine (R.A. 6). On June 18, 2002, he pled guilty to that offense in Suffolk Superior Court and received a sentence of three years to three years and one day (R.A. 9). On July 10, 2004, at the Massachusetts Correctional Institution at Norfolk, he was paroled to an Immigration and Customs Enforcement[2] detainer (R.A. 10).[3] INS agents took

---

[1]The "facts" are taken from the materials provided to the defendant in discovery, including the defendant's "A-file." Documents cited are in the Record Appendix, attached, which is referred to as (R.A. [page number] ). The defendant states these facts for purposes of this motion only. He is not conceding guilt on the above-numbered indictment.

[2]As of March 1, 2003, the former Immigration and Naturalization Services was abolished and its functions incorporated into the Department of Homeland Security: the department of INS which formerly was responsible for interior enforcement is now U.S. Immigration and Customs Enforcement, or "ICE." Many of the documents referred to in this motion, as they are dated

custody of Mr. Melo-Medina from MCI Norfolk on July 12, 2004 and took him to the Suffolk County House of Correction at South Bay.⁴

Mr. Melo-Medina was indicted for violating 8 U.S.C. § 1326 (a) and (b)(2) - illegal reentry of deported alien - on August 11, 2004.  The indictment alleged that he was found in the United States "on or about August 3, 2001" (R.A. 11-12).  On August 16, 2004, INS agents delivered Mr. Melo-Medina to the United States District Court in Boston and he was taken into custody by the United States Marshal Service.⁵  He appeared in court that day for an initial appearance before Magistrate Judge Cohen (R.A. 13-14).  Mr. Melo-Medina was detained and has been at Plymouth County Correctional Facility since August 16, 2004, in the custody of the U.S. Marshal Service.

Mr. Melo-Medina's "A-file" indicates that the Boston Police contacted INS the same day he was arrested, August 3, 2001, and an immigration detainer was generated that day (R.A. 15-16).  On August 10, 2001, one week after Mr. Melo-Medina's arrest by the Boston Police, Seth

---

before March 1, 2003, are headed with the acronym "INS."  For the sake of uniformity, "ICE" will be referred to as "INS" in this motion.

³R.A. 10 is a "Movement History" record that was faxed to defense counsel from the Central Records Unit of the Department of Correction at MCI Concord.  The record shows that on "20040710," that is, July 10, 2004, the defendant was released to the immigration detainer.

⁴Counsel was told by the Assistant United States Attorney assigned to this case that Mr. Melo-Medina was removed from MCI Norfolk by ICE agents on July 12, 2004.  A records-keeper at MCI Concord confirmed this to defense counsel on the telephone, but the "Movement History" form does not reflect this fact.  The two day gap between the time Mr. Melo-Medina was paroled to the detainer and picked up by INS agents is most likely due to the fact that July 10, 2004 was a Saturday.  The defendant informed counsel that when INS agents took him from MCI Norfolk they delivered him to South Bay.

⁵Counsel was informed by a U.S. Marshal records-keeper that computer records indicate that the defendant was taken into custody by the Marshal Service on August 16, 2004.

Plumb, Special Agent, INS, signed a report indicating that he had compared the fingerprints of Mr. Melo-Medina when arrested by the Boston Police on August 3, 2001, with the prints of the person deported on August 21, 1996, and found them to be the same (R.A. 17). A "Notice of Intent to Reinstate Prior Order" of deportation was presented to Mr. Melo-Medina, indicating that "deportation or removal from the United States has been ordered" (R.A. 18). On August 13, 2001, Richard Davies, Special Agent, INS, interviewed Mr. Melo-Medina at the Suffolk County Jail and wrote a report stating that he was informed that his prior order of deportation had been reinstated (R.A. 19). Also on that date, a memorandum was generated which stated: "Individual is amenable to federal prosecution (8 USC 1326, Reentry after Deportation/Removal.) However, DDP efforts to remove subject should continue, regardless of status of federal prosecution" (R.A. 20).

On January 4, 2002, the INS generated a "Warrant of Removal/Deportation" (R.A. 21).

In May, 2004, two months before taking custody of Mr. Melo-Medina, the INS completed a document titled "Information for Travel Document or Passport" (R.A. 22-25).

The "A-file" provided to defense counsel contains five documents generated after Mr. Melo-Medina was released to the INS detainer on July 10, 2004:

- a letter from the INS to the Consulate-General of the Dominican Republic, dated July 12, 2004, asking for a travel document for Mr. Melo-Medina, as the INS was "ready to complete the deportation proceedings in this case" (R.A. 26);

-a fax, dated July 14, 2004, from the INS to the FBI asking for a fingerprint comparison between the prints taken of Mr. Melo-Medina when arrested by the Boston Police on August 3, 2001, and the prints taken when the defendant was deported on August 21, 1996 (R.A. 27);

- a return fax indicating that the prints were identical, also dated July 14, 2004 (R.A. 28);

- a fax from INS to a records keeper asking for a "certificate of non-existence" concerning records that Mr. Melo-Medina requested permission to reenter the United States (R.A. 29).

- a return fax dated August 3, 2004, from a keeper of records for INS, stating no records were found indicating he requested permission to reenter (R.A. 30-31) .

In brief, the chronology of the case is as follows:

| | |
|---|---|
| June, 1993 | defendant convicted in U.S. District Court - sentenced to sixty months |
| August, 1996 | defendant deported to Dominican Republic |
| August 3, 2001 | defendant arrested by Boston Police |
| | same day - INS notified of defendant's arrest |
| August 10, 2001 | defendant's fingerprints compared, INS determines he is person who was previously deported; prior order of deportation reinstated |
| August 13, 2001 | defendant interviewed by INS agent, report generated stating defendant to be deported and may be prosecuted for illegal reentry |
| January 4, 2002 | warrant of deportation issued |
| June 18, 2002 | defendant sentenced in Suffolk Superior Court to three years to three years and one day |
| May 24, 2004 | INS prepares "Information for Travel Document or Passport" |
| July 10, 2004 | defendant paroled to INS detainer at MCI Norfolk |
| July 12, 2004 | INS agents take defendant into custody and transport him to Suffolk County House of Correction at South Bay |
| | same day - letter to Dominican Consulate asking for travel documents as defendant "ready to be deported" |

| | |
|---|---|
| July 14, 2004 | defendant's fingerprints compared again, INS requests "certificate of non-existence" of documents asking for reentry |
| August 3, 2004 | certificate of non-existence sent to INS Boston from records-keeper |
| August 11, 2004 | defendant indicted in U.S. District Court for illegal reentry |
| August 16, 2004 | defendant transported to U.S. District Court and taken into custody by U.S. Marshal Service, first appearance in court |

II. ARGUMENT

    A. The Speedy Trial Act was violated by the defendant's thirty-three day detention prior to indictment.

        1. The Speedy Trial Act applies here.

18 U.S.C. §§ 3161 (b) and 3162 (a) (1), the Speedy Trial Act, mandate that the government file an indictment within thirty days of a person's arrest. If this time limit is exceeded, the charges must be dismissed. As a general rule, the provisions of the Speedy Trial Act do not apply to civil detentions. An exception to this rule is when the INS arrests an alien who is facing not only deportation but also criminal prosecution, and the INS holds the person so that the government can pursue the criminal case. "When the government arrests and detains an individual for the purpose of developing a criminal case, that person has certain rights, even if the initial arrest was a civil one to effect a deportation." *United States v. Gomez-Estrada*, 2000 U.S. Dist. LEXIS 2753, 17. The fundamental principle is that "the government may not exploit its civil authority to develop criminal prosecutions." *Id*. at 22. See *United States v. Garcia-Martinez*, 254 F.3d 16, 20 (1st Cir. 2001) (Speedy Trial Act applies to civil detentions where primary purpose is to hold for future criminal prosecution); *United States v. Cepeda-Luna*, 989 F.2d 353, 357 (9th Cir. 1993) (same), cited with approval in *United States v. Tejada*, 255 F.3d 1,

5

4 (1st Cir. 2001) (F. R. Crim. P. 5 (a) applies if government holds person under civil process to investigate criminal charges); *United States v. De La Pena-Juarez*, 214 F. 3d 594, 598 (5th Cir. 2000) (Speedy Trial Act applies where primary purpose of civil detention was to hold for future criminal prosecution); *United States v. Noel*, 231 F.3d 833, 836 (11th Cir. 2000) (same); *United States v. Osunde*, 638 F. Supp. 171 (N.D. Cal. 1986) (same); *United States v. Vasquez-Escobar*, 30 F. Supp. 2d 1364, 1367 ( M.D. Fla 1988) (same).

When a defendant is held by the INS for both deportation and criminal prosecution, the question arises as to precisely when the Speedy Trial clock begins to run. In *United States v. Restrepo*, 59 F. Supp. 2d 133, 134 (D. Mass. 1999), Judge Wolf held that where "civil detention is used to further a criminal investigation based on the same offense, the Speedy Trial Act's 30-day limit begins running at the time of the INS arrest." See also *United States v. Pena*, 73 F. Supp. 2d 56, 59 (D. Mass. 1999) (same); *United States v. Cabral*, 2000 U.S. Dist. LEXIS 5472 (same, regarding rights under F. R. Crim. P. 5 (a)); *Gomez-Estrada*, *supra* at 15-16 (civil arrest "in essence" a criminal arrest where INS designated defendant "detained for prosecution" and focus was to develop criminal case). In short, where the INS determines that an alien is amenable to prosecution before or right after arresting him, the arrest is "converted to a de facto criminal arrest almost immediately." *Gomez-Estrada*, *supra* at 23. See *Vasquez-Escobar*, 30 F. Supp. 2d at 1367 (where defendant held by INS on final order of deportation to provide government time to indict criminally, civil detention amounted to arrest in connection with criminal case).

    2. <u>The indictment must be dismissed</u>.

Mr. Melo-Medina was paroled to the INS detainer on July 10, 2004. He was not indicted until August 11, 2004, thirty-three days later.[6]

This Court should find that Mr. Melo-Medina was arrested for the purpose of the Speedy Trial Act on July 10, 2004. As noted above, in August, 2001, three years before his indictment, an INS official examined Mr. Melo-Medina's fingerprints and determined that he was the same person who had been previously deported, and the prior order of removal was reinstated against him.[7] In addition, in a memo dated August, 2001, the INS recognized that Mr. Melo-Medina was eligible for prosecution for illegal reentry (R.A. 20). Thus, long before July 10, 2004, when Mr. Melo-Medina was released to the immigration detainer, he was not only marked for deportation but for criminal prosecution, as well.

There is no question that the government's efforts to deport Mr. Melo-Medina were practically complete at the time of his arrest on July 10 and that the government made no meaningful efforts to deport Mr. Melo-Medina during the thirty-three days he was held before he was indicted. In May, 2004, two months before taking custody of the defendant, the INS prepared a form with personal information about Mr. Melo-Medina in preparation for deporting him (R.A. 22-25). Finally, on July 12, 2004, the INS sent a letter to the Consulate-General of the

---

[6] The number thirty-three is reached by counting July 10 as day one and August 11 as day thirty-three.

[7] Mr. Melo-Medina was not entitled to any further process with regard to his deportation proceedings. Title 8 U.S.C. § 1231 (a)(5) provides that when an alien reenters illegally after having been removed, the prior order of removal is reinstated and is not subject to being reopened or reviewed, the alien is not eligible for any relief, and he "shall be removed under the prior order at any time after reentry."

Dominican Republic, asking for a travel document for the defendant, as the INS was "ready to complete the deportation proceedings in this case" (R.A. 26). There is no indication that the INS did anything further to effect Mr. Melo-Medina's deportation. The subsequent documents generated by INS, asking for confirmation from the FBI that the defendant's prints were the same as the person who had previously been deported (R.A. 28) and requesting a certificate of "non-existence" concerning records that the defendant requested permission to reenter the United States (R.A. 29), were in preparation for the criminal prosecution, not deportation. INS had already determined three years earlier that Mr. Melo-Medina's fingerprints matched those of the person deported earlier, see R.A.17, and the prior order of deportation was reinstated at that time, see R.A. 18.

In short, the record demonstrates that INS was ready to deport the defendant when he was paroled to the INS detainer in July, 2004, but held him so that he could be criminally indicted. As the government failed to indict the defendant within the time permitted by the Speedy Trial Act, the indictment must be dismissed.

    B.  <u>This Court should dismiss the indictment with prejudice</u>.

18 U.S.C. § 3162 (a)(1) sets out factors the Court should consider in making the determination whether an indictment should be dismissed with or without prejudice: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

Under these factors, the indictment should be dismissed with prejudice. First, with regard to the crime charged, illegal reentry does not involve physical violence or monetary loss by a

8

third party. See *Restrepo*, 73 F. Supp. 2d at 60 (illegal reentry is a "meaningful offense" but is not a crime of violence); but see *Vasquez-Escobar*, 30 F. Supp. 2d at 1368 (court assumes violation of 8 U.S.C. § 1326 (a) is "serious," but dismisses with prejudice because of other factors).

Second, the facts and circumstances that led to the delay favor dismissal with prejudice. The delay is "wholly the fault of the government"; Mr. Melo-Medina did nothing to contribute to it. *Restrepo*, 73 F. Supp. 2d at 60; *Vasquez-Escobar*, 30 F. Supp. 2d at 1368. Furthermore, one cannot appreciate the "circumstances" of this case by viewing it in isolation: this is one case in a long line of cases revealing the practice of INS improperly holding aliens under civil process for the purpose of preparing criminal cases against them. The spate of cases in this District in 1999 and 2000 which dealt with the detention of aliens by INS pending criminal prosecution - *Restrepo*, *supra*, (decided July 1, 1999); *Pena*, *supra*, (decided October 8, 1999); *Gomez-Estrada*, *supra*, (decided February 4, 2000); and *Cabral*, *supra*, (decided April 10, 2000) - were litigated at a time when it was the acknowledged policy of INS to hold civil detainees solely for the purpose bringing criminal charges against them, a "systematic practice that regularly violated the rights of putative defendants." *Pena*, 73 F. Supp. 2d at 60. This case demonstrates that that practice has not ended.

In *Restrepo*, the defendant was detained by INS for 56 days, far longer than necessary to deport him, so that the criminal case against him could be prepared. The government represented to Judge Wolf that it was the policy of INS to detain aliens solely for the purpose of deporting them, but acknowledged that the policy was not followed in Mr. Restrepo's case. Recognizing that the defendant's rights under the Speedy Trial Act had been violated, the government moved

9

to dismiss the indictments with prejudice. *Restrepo*, 59 F. Supp 2d at 138.

In *Pena*, decided four months after *Restrepo*, Judge Wolf found that the government's assertion in the *Restrepo* case, that it was not the policy of INS to hold aliens to develop criminal cases against them, was untrue. The Court stated that in fact, "the *Restrepo* case, in which there was no effort to obtain travel documents because criminal prosecution was contemplated by INS, was not an aberration, but, rather, was consistent with the INS's actual standard practice." *Id*. at 58. Judge Wolf noted that the government had assured him that it had made changes to its policy for the handling of future illegal reentry cases following the *Restrepo* decision. *Id*. at 59. Judge Wolf dismissed Mr. Pena's indictment with prejudice, however, because

> the INS has not been following its stated policy. It has been systematically violating the Speedy Trial Act rights of defendants or causing such violations to occur. There may now be many people who are improperly incarcerated. Since the violation of the Speedy Trial Act in this case was not an aberrant event, dismissal with prejudice should send a message that the Speedy Trial Act must be obeyed and that it is important that the INS adhere to the new policy that has been developed by the United States Attorney's Office.

*Id*. at 60-61.

Finally, dismissal with prejudice in this case will not impede the administration of justice, as the defendant will be deported, regardless of the outcome of the case. See *Pena*, 73 F. Supp. 2d at 61 (dismissal with prejudice supported by fact that defendant will be deported); *Osunde*, 638 F. Supp. at 175-176 (where defendant will be deported, dismissal with prejudice appropriate as it is "the most expedient avenue by which to achieve the inevitable"); *Vasquez-Escobar*, *supra* at 1368-1369 (justice served by dismissal with prejudice because defendant will be deported).

While the Court should dismiss with prejudice under the factors listed in 18 U.S.C. § 3162 (a)(1), the Court should also dismiss the indictment with prejudice under the exercise of its

supervisory powers to deter future illegal conduct by the INS. Although such powers are to be used "sparingly," United States v. Santana, 6 F.3d 1, 10 (1st Cir. 1993), the facts here warrant that remedy. The government has long known that "the use of the I.N.S. as a substitute for criminal arrest is improper." United States v. Okuda, 675 F. Supp. 1552, 1554-55 (D. Haw. 1987) (allowing the defendant's motion to dismiss with prejudice in part, based on Speedy Trial violations). In *Gomez-Estrada*, this Court ruled that the defendant's rights under F. R. Crim. P. 5 (a) and 18 U.S.C. § 1357 (a) (4) were violated, but dismissal with prejudice under the Court's supervisory powers was not warranted in light of the government's assurances to Judge Wolf in the *Pena* case that it had altered its policy to conform to the law. "If the government were to continue to exploit its civil authority to arrest and detain to develop criminal prosecutions after it became clear, in *Restrepo*, that such conduct was impermissible, dismissal would be warranted." *Gomez-Estrada*, *supra* at 26. The Court should recognize here that despite assurances to the contrary, "actual practice may depart from the government's stated policy in particular cases. When it does, the government's power to prosecute may be forfeited." *Restrepo*, *supra* at 138; *Osunde*, *supra* at 177 (dismissal with prejudice for Speedy Trial Act violation redresses infringement of defendant's liberty interests, as well as serving notice on government that such action is not tolerated by courts).

III. Conclusion

      For the reasons stated above, Mr. Melo-Medina asks this Court to dismiss the indictment against him with prejudice.

                              GREGORIO MELO-MEDINA
                              By his attorney,

                              /s/ Page Kelley
                              Page Kelley
                                 B.B.O. #548237
                              Federal Defender Office
                              408 Atlantic Avenue, 3rd Floor
                              Boston, MA  02110
                              Tel: 617-223-8061

Date: April 25, 2005