UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
            V.                    )    CR. NO. 04-10236-NG
                                  )
GREGORIO MELO-MEDINA              )
                                  )

**OPPOSITION TO MOTION TO DISMISS**

The United States opposes the motion of defendant Gregorio Melo-Medina ("Melo-Medina") to dismiss the Indictment.  In support of its opposition, the United States says the following.

1.  Even under United States v. Restreppo, 59 F.Supp. 2d 133, 137 (D.Mass. 1999), the primary case cited by the defendant, civil detention by the INS does not trigger the Speedy Trial Act unless "...that period of detention is used primarily or exclusively to develop criminal charges involving the conduct on which the civil arrest was based...".  (Emphasis added).  As established below, the defendant was not held primarily or exclusively to develop criminal charges against him.  See also United States v. De La Pena-Juarez, 214 F.3d 594, 598 (5th Cir. 2000) (Speedy Trial Act is triggered by civil detention only if defendant demonstrates that primary or exclusive purpose of civil detention was to hold him for future criminal prosecution).

2.  Contrary to Melo-Medina's assertion (see his motion at p. 7), it is not true that "the government made no meaningful efforts to deport Mr. Melo-Medina during...[the time] he was held

before he was indicted." First, on July 12, 2004, the day he was first taken into ICE custody, ICE immediately requested travel documents for Melo-Medina from the Consulate-General of the Dominican Republic. See RA 26, attached to Defendant's Motion. Melo-Medina could not be deported absent issuance of such travel documents by the Dominican Consulate-General. The letter requested the Consulate-General to "expedite the issuance of a travel document." Id.

Second, following receipt of travel documents from the Consulate-General, Melo-Medina was scheduled to be deported on August 9, 2004, twenty-eight days after he was first taken into ICE custody (on July 12, 2004). See Exhibit 1, attached, at pages 1-2. His airline ticket was booked on July 26, 2004. Id. at p. 1. The airline ticket was paid for on August 2, 2004. See Exhibit 2, attached.

3. Contrary to the defendant's assertion that he was held by ICE for more than thirty days "so that he could be criminally indicted" (see defendant's motion at p. 8), the only reason that Melo-Medina was not deported to the Dominican Republic on August 9, 2004, as scheduled, (twenty-eight days after being taken into ICE custody), was that he became too ill to travel. On August 7, 2004, (two days before he was scheduled to be deported), Melo-Medina was moved from the ICE detainee section of the Suffolk County House of Correction ("South Bay") to the South Bay Medical

2

Unit, apparently suffering from a flare-up of colitis. On August 8, 2004, his condition worsened to the point that he was transferred and admitted to Boston Medical Center, where he stayed, as an inpatient, overnight and into August 9, 2004, the day of his scheduled deportation.

On August 9, 2004, Melo-Medina was transferred back to the medical unit at South Bay. He was not released from the medical unit to the regular ICE detainee unit at South Bay until August 10, 2004. Melo-Medina was indicted in this case on August 11, 2004. See the South Bay (Suffolk County House of Correction) movement log/transfer history, a copy of which is attached as Exhibit 3. (The notations on the two right-hand columns of the log/transfer history are as follows: HOC 8-2 is the [2nd] floor of building 8 of South Bay which is the unit specifically for ICE detainees. HOC 6-02-1 is Bed/room 1, 2nd floor, building 6 of South Bay which is a Medical Unit. HOC BMC is the secure inpatient unit at Boston Medical Center. NSJ is the Nashua Street Jail). See also the affidavit of ICE Special Agent Julia Lee, attached as Exhibit 4, and the notation in Melo-Medina's ICE file, a copy of which is attached as Exhibit 5.

4. Also contrary to the defendant's apparent assertion (see his motion at p. 8), the government did not intentionally and knowingly hold him in ICE custody longer than thirty (30) days for the purpose of obtaining a criminal indictment against him.

3

The ICE Special Agent assigned to the case and the undersigned Assistant U.S. Attorney both believed that Melo-Medina was released to the ICE detainer and taken into ICE custody on July 12, 2004, and, therefore, that the indictment on August 11, 2004, occurred precisely thirty days thereafter. See Memorandum of ICE case Agent Julia Lee to the U.S. Attorney's Office, dated July 14, 2004, attached as Exhibit 6, (stating "Melo was released to his INS detainer and was taken into custody by ICE on July 12, 2004.") See the ICE Agent Lee's affidavit, Exhibit 4, at p. 1.

5.   Similarly contrary to the defendant's assertion, and unlike in U.S. v. Restreppo, 59 F.Supp. 2nd at 60, the delay that resulted in Melo-Medina being held longer than thirty days prior to indictment was not "wholly the fault of the government" (defendant's motion at p. 9) but, rather, was caused entirely by his illness. As noted above, if Melo-Medina had not become ill (so ill he required hospitalization), he would have been deported on August 9, 2004, as scheduled, and prior to indictment. Melo-Medina was not released from the medical unit at South Bay until August 10, 2004. He was indicted on August 11, 2004.

6.   The facts described above plainly show that the defendant's claim that "this is one case in a long line of cases revealing the practice of INS improperly holding aliens under civil process for the purpose of preparing criminal cases against them"(Defendant's motion at p.9) is entirely false. As noted

4

above, travel papers for the defendant, without which he could not be deported, were requested by ICE the day he came into ICE custody.  Upon receipt of the travel papers, the defendant was scheduled for deportation (on August 9, 2004,) and his airline tickets were purchased (on August 2, 2004).  But for the defendant's illness, which required him to be hospitalized, he would have been deported on August 9, 2004.  Moreover, the ICE case agent (and the undersigned Assistant U.S. Attorney) both believed that the defendant was released from state custody to the ICE detainer on July 12, 2004, and, therefore, that he was indicted thirty (30) days thereafter (on August 11, 2004).

### Conclusion

Because, as noted above: any delay resulting in Melo-Medina's indictment was caused solely by the defendant's illness (and not by the government); ICE took prompt and appropriate steps to deport him (including requesting travel documents, scheduling his deportation, and purchasing his airline ticket); and the ICE Special Agent assigned to the case (and the undersigned Assistant U.S. Attorney) each believed that the Indictment was (and would be) obtained no more than thirty days after the defendant was first held in ICE custody, the

defendant's motion should be denied, or, in the alternative, dismissed without prejudice.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:         

CHRISTOPHER F. BATOR
Assistant U.S. Attorney


## CERTIFICATE OF SERVICE

I, CHRISTOPHER F. BATOR, certify that I have served a copy of the above upon Page Kelly, Esq., Federal Defender Office, 408 Atlantic Avenue, Boston, MA 02110 by first class mail.

CHRISTOPHER F. BATOR
Assistant U.S. Attorney

Date: 5/31/05

6