UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10236 NG |
| | ) | |
| GREGORIO MELO-MEDINA | ) | |
| | ) | |

SENTENCING MEMORANDUM OF GREGORIO MELO-MEDINA

Gregorio Melo-Medina respectfully submits this Memorandum in support of his request that the Court sentence him to thirteen months' incarceration. In part I below, he argues that two years is the applicable statutory maximum under 8 U.S.C. § 1326, because he was not charged with, nor did he plead guilty to, prior conviction of a felony. In part II, he asks the Court to consider the impact that his serious, longstanding mental illness had on his commission of the crime and depart from the applicable guideline range under U.S.S.G. § 5K2.0 (a)(4) . In part III, Mr. Melo-Medina addresses the reasons under 18 U.S.C. § 3553 (a) why the Court should impose the requested sentence.

    I. Two years is the applicable statutory maximum under 8 U.S.C. § 1326.

        A. The defendant was not indicted for, nor did he plead guilty to, being deported after having been convicted of a felony.

Mr. Melo-Medina was charged with violating 8 U.S.C. § 1326 (a), "Illegal Re-entry of Deported Alien." The indictment alleges that he, "being an alien and having been excluded, deported and removed from the United States..." was found here, "in violation of Title 8, United States Code, Sections 1326(a) and (b) (2) and Title 6, United States Code, Sections 202 (3) and (4) and Section 557." The indictment does not allege his prior conviction of any crime. A copy

of the indictment is attached as "A."

On June 30, 2005, the defendant pled guilty before this Court.  At the hearing, the defendant did not admit to any fact pertaining to any prior criminal conviction.

    B.  <u>This Court should find that the defendant cannot be sentenced under 18 U.S.C. §1326 (b) (2) and should sentence him under subsection (a) to no more than two years</u>.

    1.  <u>The Almendarez-Torres decision</u>.

8 U.S.C. § 1326 (a) states that an alien who is deported and reenters shall be imprisoned not more than two years.  Section 1326 (b) (2) raises the statutory maximum to twenty years for an alien "whose removal was subsequent to a conviction for commission of an aggravated felony." The statute does not set out the manner or standard of proof required to support the ten-fold increase in the statutory maximum, although the statute does require findings regarding the class of the conviction, the timing relative to removal, and the characteristics that make a felony aggravated under 8 U.S.C. § 1101(a) (43).

In *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the defendant, having admitted in his guilty plea colloquy that his deportation "had taken place 'pursuant to' three earlier 'convictions' for  aggravated felonies," argued that the Fifth Amendment required the prior felony convictions to be charged in the indictment.  *Id*. at 227.  The Court, in a five to four decision, held that subsection (b) (2) is

    a penalty provision, which simply authorizes a court to increase the sentence for a recidivist.  It does not define a separate crime.  Consequently, neither the statute nor the Constitution require the Government to charge the factor that it mentions, an earlier conviction, in the indictment.

*Id*. at 226-227.

2

In his dissent, Justice Scalia wrote that "the text of the statute supports, if it does not indeed demand, the conclusion that subsection (b) (2) is a separate offense that includes the violation described in subsection (a) but adds the additional element of prior felony conviction." *Id*. at 250.  He criticized the majority's ruling that it was constitutionally permissible for "a defendant's sentencing exposure to be increased tenfold on the basis of a fact that is not charged, tried to a jury, and found beyond a reasonable doubt." *Id*. at 260.  He questioned why recidivism should be an exception to the rule that a fact which increases maximum permissible punishment must be found by a jury beyond a reasonable doubt: "[T]here is no rational basis for *making* recidivism an exception." *Id.* at 257-258 [emphasis in original].  He concluded that under the doctrine of constitutional avoidance, the Court should have construed section (b) (2) as defining a separate offense that must be charged and proven.  *Id*. at 271.[1]

2.  *Almendarez-Torres* is no longer good law.

Cases decided after *Almendarez-Torres* -  *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona,* 536 U.S. 584 (2002),  *Blakely v. Washington*, 125 S. Ct. 2531 (2004), *United States v. Booker*, 125 S. Ct. 738 (2005), and *Shepard v. United States*, 125 S. Ct. 1254 (2005) - establish that the Sixth Amendment requires factors that increase statutory maximums to be charged and either proved beyond a reasonable doubt to a fact-finder or admitted as part of a guilty plea.  Although the Court has continued to mechanically cite the irrational "exception" to this rule carved out by *Almendarez-Torres*, according to which prior convictions are the only facts

---

[1]"[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."  *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

increasing statutory maximums that do not need to be charged and proved, a majority of the Court believes that *Almendarez-Torres* was wrongly decided.  Under the reasoning of these cases, *Almendarez-Torres* is no longer good law.  This Court should utilize the doctrine of constitutional doubt to find that the statute under which the defendant is charged sets out a separate crime in subsection (b) (2).  Therefore, since the defendant was not charged, and did not plead guilty to, the predicate conviction, he cannot be sentenced under that section.[2]

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  While affirming the questionable holding of *Almendarez-Torres,* the Court tightly limited that case to its facts, noting that *Almendarez-Torres* "represents at best an exceptional departure from the historic practice [of requiring pleading and proof of factors increasing statutory maximums]."  530 U.S. at 484, 487.  The Court emphasized that no question regarding jury trial or standard of proof arose in *Almendarez-Torres* and explicitly noted that *Almendarez-Torres* may have been incorrectly decided and should be narrowly applied.  *Id*. at 488-489.  The Court's lack of confidence in *Almendarez-Torres* was undoubtedly reinforced by the defection of Justice Thomas, who authored

---

[2]The Supreme Court stated long ago the "one [rule of] universal application, - that every single ingredient of the offence must be accurately and clearly expressed; or, in other words, that the indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted."  *United States v. Reese*, 92 U.S. 214, 232 (1875) (Clifford, J., concurring).  This long-standing precedent, solid law before *Almendarez-Torres*, and upheld in case law since *Almendarez-Torres*, indicates that *Almendarez-Torres* is an invalid deviation from the common law and constitutional requirement that all the ingredients necessary for punishment be alleged in an indictment.  As the defendant was not indicted for having a specific conviction under 8 U.S.C. § 1326 (b) (2), he cannot now be punished for it.

a concurring opinion renouncing his swing vote in *Almendarez-Torres*. *Apprendi*, at 520-21

(Thomas, J., concurring).

     In *Ring*, the Court addressed the inconsistency between *Apprendi* and *Walton v. Arizona*,

497 U.S. 639 (1990), in which the Court had upheld fact finding by a judge concerning sentencing

factors predicate to a death sentence. The Court found that evolving constitutional litigation

undermined *Walton*, and overruled that case. The Court specifically quoted Justice Thomas's

concurring opinion in *Apprendi*, in which he asserted *Almendarez-Torres* was wrongly decided:

> [I]f the legislature defines some core crime and then provides for increasing the
> punishment of that crime upon a finding of some aggravating fact [,] ... the core crime and
> the aggravating fact together constitute an aggravated crime, just as much as grand larceny
> is an aggravated form of petit larceny. The aggravating fact is an element of the
> aggravating crime.

*Ring,* 536 U.S. at 605 (quoting *Apprendi*, 530 U.S. at 501 (Thomas, J., concurring)). In reversing

*Walton*, the Court stated: "Because Arizona's enumerated aggravating factors operate as 'the

functional equivalent of an element of a greater offense,' *Apprendi*, 530 U.S. at 494 n.19..., the

Sixth Amendment requires that they be found by a jury." *Ring*, 536 U.S. at 609.

     In *Blakely* and *Booker*, the Court held that increases in mandatory guidelines punishment

implicated Sixth Amendment rights, but nevertheless quoted *Apprendi* in excluding "the fact of a

prior conviction" from its holding that any fact increasing the penalty for a crime beyond the

prescribed statutory maximum must be found by a jury beyond a reasonable doubt or admitted to

at a guilty plea. *Blakely*, 124 S. Ct. 2536; *Booker*, 125 S. Ct. at 747. By the time of the *Shepard*

decision, however, five months after *Booker*, Justice Thomas openly questioned why the Court

adhered to the rule of *Almendarez-Torres*, "which draws an exception to the *Apprendi* line of

5

cases for judicial fact finding that concerns a defendant's prior convictions." *Shepard*, 125 S. Ct.

at 1264. Concurring, Justice Thomas stated that *Almendarez-Torres*

> has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided [citation omitted]. The parties do not request it here, but in an appropriate case, this Court should consider *Almendarez-Torres*' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of *Almendarez-Torre*s, despite the fundamental "imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements."

*Id.* at 1264, quoting *Harris v. United States*, 536 U.S. 545, 581-582 (2002) (Thomas, J.,

dissenting).

In short, the "breadth of the holdings" in the recent cases cited "have in fact overruled"

*Almendarez-Torres*. Cf. <u>United States v. Malouf</u>, 2005 WL 1398624 (D.Mass.) (<u>Booker</u> and

<u>Blakely</u> have in fact overruled <u>Harris</u>). This Court should find that 8 U.S.C. § 1326 (2) (b) sets

out a separate crime that was neither charged nor admitted to by the defendant. Therefore Mr.

Melo-Medina can only be sentenced, under subsection (a), to a maximum of two years.

    3. <u>Even if Almendarez-Torres survives, it does not apply to this case</u>.

The Court in <u>Almendarez-Torres</u> addressed only the indictment clause of the Fifth

Amendment. The defendant admitted during the plea colloquy that his deportation "had taken

place 'pursuant to' three earlier 'convictions' for aggravated felonies." *Almendarez-Torres*, 523

U.S. at 227. The Court there expressly disavowed any holding regarding the manner and standard

of proof required to establish the prior aggravated felony. <u>Id</u>. at 248. Here, Mr. Melo-Medina did

not plead guilty to having the predicate conviction under subsection (2) (b). Accordingly, even

assuming the continuing vitality of *Almendarez-Torres* as a statement of Fifth Amendment law,

sentencing him to more than two years violates his Sixth Amendment rights under *Apprendi*,
*Blakely*, and *Booker*.

Moreover, the current version of 8 U.S.C. § 1326 differs from that addressed in
*Almendarez-Torres*. The statute at issue in *Almendarez-Torres* was simpler: former section 1326
included no reference to removal and created two simple categories of aliens "whose deportation
was subsequent to a conviction for commission of a felony (other than an aggravated felony)" and
"whose deportation was subsequent to a conviction for commission of an aggravated felony." 8
U.S.C. § 1326(b)(1) and (2) (1988). In addition, the definition of "aggravated felony" under 8
U.S.C. § 1101(a)(43) was less complex than at the time of the *Almendarez-Torres* decision. In
1988, the initial definition included only murder, drug trafficking, and weapons trafficking. Pub.
L. No. 100-690, § 7342, 102 Stat. 4469, 4469-70. In 1990, the definition expanded to include
crimes of violence for which a term of at least five years imprisonment was imposed.
Immigration Act of 1990, Pub. L. No. 101-649, § 501, 104 Stat. 4978, 5048. In 1996, after Mr.
Almendarez-Torres's guilty plea, the definition was expanded to cover dozens of potential
offenses depending on various characteristics of the offense. 8 U.S.C. § 1101(a) (43) (2000). [3]

To increase the statutory maximum, 8 U.S.C. § 1326 now requires findings regarding the
class of the conviction, the timing relative to removal, and the characteristics that make a felony

---

[3]Some of the offenses involve factors that would not be included in either a judgment or
charging documents, such as the amount of loss (8 U.S.C. § 1101(a)(43)(D) and (M)), the
purpose of assisting a family member (8 U.S.C. § 1101 (a)(43)(N) and (P)), and factors
classifying crimes as "crimes of violence" and drug trafficking crimes. See James P. Fleissner
and James S. Shapiro, Sentencing Illegal Aliens Convicted of Reentry After Deportation: A
Proposal for Simplified and Principled Sentencing, 8 SENT. RPTR. 243 (March/April 1996) (the
tortuous amendment process has increased the complexity of determining what is an "aggravated
felony").

aggravated under 8 U.S.C. § 1101 (a) (43).  However, the statute does not explicitly set out the

manner or standard of proof for the increase in the statutory maximum.  Compliance with the

mandate of *Apprendi* and its progeny require that those facts - facts beyond the mere fact of prior

conviction  - be proved beyond a reasonable doubt or admitted by the defendant.  That has not

been done here.

In sum, *Almendarez-Torres* does not apply here because unlike that case, Mr. Melo-

Medina did not admit as part of his plea that he had the necessary conviction to raise the statutory

maximum to twenty years.  Under the present statute, the proof concerning the prior conviction is

complex and the Court cannot assume the facts necessary to that finding.  Not having waived his

Sixth Amendment rights to proof of the conviction, Mr. Melo-Medina cannot now be punished

under the twenty year maximum.

II.      Mr. Melo-Medina should receive a downward departure because his untreated
         mental illness played a causative role in his decision to illegally reenter the
         United States.

U.S.S.G. § 5H1.3 states that mental and emotional conditions "are not ordinarily relevant

in determining whether a sentence should be outside the applicable guideline range, except as

provided in Chapter 5, Part K, Subpart 2 (Other Grounds for Departure)."  § 5K2.0 (a)(4) states

that an offender characteristic identified as "not ordinarily relevant in determining whether a

departure is warranted may be relevant to this determination only if such offender characteristic or

other circumstance is present to an exceptional degree."

In this case, the defendant's "mental condition" should be considered by this Court as the

basis for a downward departure because at the time of the offense, the defendant was suffering

from an untreated mental disease that played a causative role in the defendant's commission of the

8

crime.  Mr. Melo-Medina submits the report of Catherine C. Ayoub, R.N., Ed.D. in support of this argument.  Because the report details Mr. Melo-Medina's personal history and his medical and psychiatric issues, it is filed under seal, and counsel will refer only generally to the facts set out at length in the report.

Dr. Ayoub's report details Mr. Melo-Medina's personal history, including the emotional and physical abuse he suffered as a child and his long-standing history of serious depression, including a suicide attempt in 1983.  When Mr. Melo-Medina was deported to the Dominican Republic in 1996, his wife, Jacqueline Alvarez, and their two small children joined him.  Ms. Alvarez describes this time as the most difficult time in her life, as they were living in a small isolated farm house and were extremely poor.  She and Mr. Melo-Medina could not afford enough food to feed their children, or medicine to treat her and her son's asthma.  She reports that during this time Mr. Melo-Medina's mental health deteriorated to the point where he was unable to even leave the house in which they were living.  Jacqueline Alvarez describes him as being "like a zombie," unable to interact with others, locking himself alone inside the house, and refusing to eat.   After about two and a half years, Ms. Alvarez reluctantly returned to the United States with her children because she knew she could make a better life for them here.

After Ms. Alvarez left the Dominican Republic, Mr. Melo-Medina's mental health continued to deteriorate and finally one of Mr. Melo-Medina's uncles persuaded him to see a psychiatrist.  Counsel has a record from the doctor whom Mr. Melo-Medina saw, attached as exhibit B.  Mr. Melo-Medina was prescribed anti-psychotic and anti-depressant drugs (thorazine and amitriptyline) but did not continue taking them because of their side effects.

Finally in late 1999, suicidal and unable to think of any other option, Mr. Melo-Medina

returned to the United States to be reunited with his wife and children.  As Dr. Ayoub explains:

> Mr. Melo's return to the United States appears to have been precipitated by a sincere belief
> that he would die if he did not return to see the only person that has been of positive
> support to him in his life, Ms. Alvarez.  The extent of his isolation, the serious
> disturbances in sleep and appetite added to the ever increasing sense that he was losing
> himself in Bani.  Seeking out his family was an illegal act, but was supportive of his
> emotional health. His illegal entry into the United States was likely not thought through
> with care, but was an act of desperation.

Psychological Evaluation for Aid in Sentencing, p. 9

In short, Mr. Melo-Medina's serious and long-standing depression was present "to an

exceptional degree" in that it played a direct causative role in his commission of the offense.  For

this reason the Court should depart downward from the applicable guideline range.

III.  18 U.S.C. § 3553 (a) considerations.

    A.  Nature of the offense  (§ 3553 (a) (1)).

Mr. Melo-Medina's criminal conduct was non-violent.

    B.  History and characteristics of Mr. Melo-Medina.
        (18 U.S.C. §§ 3553 (a) (1) and 3661).

Mr. Melo-Medina's personal history and his mental health issues are set out in the

Presentence Report and in Dr. Ayoub's report.  In addition, letters from his partner, Jacqueline

Alvarez, and their two children are attached as exhibit C.

    C.  The need "to protect the public from further crimes of the defendant" (§ 3553
        (a) (2) (c).

If this Court allows Mr. Melo-Medina to return to the Dominican Republic, he will not

repeat his mistake of illegally returning to the United States.  As Dr. Ayoub states in her report,

Mr. Melo-Medina understands that he needs structure and family support in order to manage his

mental health issues.  When he was deported to the Dominican Republic before, he was

10

unemployed.  This time, he has been offered a job managing a restaurant owned by his uncle,

Porfidio Melo.[4]  A formal letter attesting to this job offer is attached as exhibit D.  His uncle is ill

and has traveled to the United States recently to seek medical treatment.  It is important that Mr.

Melo-Medina take advantage of this job offer soon as his uncle is in need of immediate help with

the restaurant.  In addition, Mr. Melo-Medina feels that since his children are teenagers they will

be able to visit him more easily and frequently and he will not miss them as he did when they

were small.  Finally, Mr. Melo-Medina has come to realize that he must seek treatment for his

mental health problem and cannot allow himself to reach a point of crisis, as he did before.

> D. The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (§ 3553 (a) (2) (A)).

The requested sentence satisfies the above concerns.  Mr. Melo-Medina has been

incarcerated on the present indictment since August 16, 2005 at the Plymouth County

Correctional Facility in Plymouth, Massachusetts.  It is well-known that federal inmates at

Plymouth serve "hard time" there: the inmates do not go outside for recreation; there are no

contact visits with family; visits are of extremely limited duration; there are no educational

opportunities; federal inmates may not work; there are no drug programs; and the medical unit is

notoriously bad.  In addition, because of his status as an illegal alien, any additional time Mr.

Melo-Medina  must serve will be longer and more difficult than if he were a citizen:  as an illegal

alien he will be housed in a higher security facility than he might otherwise be and he will not be

eligible for a half-way house program at the end of his sentence.  Finally, after serving his

---

[4]This is the same uncle who helped Mr. Melo-Medina seek psychiatric help when he was last in the Dominican Republic.

sentence, he will undoubtedly spend additional months in INS custody awaiting deportation.

In addition, the Court should consider that the government here waited for Mr. Melo-Medina to serve out a three-year sentence in state custody before indicting him at the ninth hour for illegal reentry.[5]  Mr. Melo-Medina  "came to INS attention" on August 3, 2001, when he was arrested by the Boston Police on a Suffolk County case (Presentence Report, p. 2, ¶ 13), and has never left custody since that time (Presentence Report, p. 6, ¶ 35).   Although the authorities have known who he was, and knew that he was "amenable to prosecution" in federal court for illegal reentry since his arrest, he was not indicted on this case until he after he was released from state custody, on August 11, 2004.[6]   While this may not rise to a case of delay that would qualify for a downward departure under the Guidelines,  see United States v. Saldana, 109 F. 3d 100, 104 (1st Cir. 1997) (downward departure may be warranted for extreme case of delay in prosecution that prevents defendant from serving concurrent time); United States v. Martinez, 77 F.3d 332, 336 (9th Cir. 1996) (downward departure under U.S.S.G. § 5K2.0 proper to avoid prejudice defendant faces as a result of a delay in indictment),  the Court should consider this factor under 18 U.S.C. § 3553(a) as it pertains to whether the defendant has been made to suffer enough for the charged crime.

Finally, the length of Mr. Melo-Medina's incarceration is affected by another happenstance, which is that he returned to a district that does not have a so-called fast track

---

[5]Defendant withdrew his Motion to Dismiss Indictment, which set out an argument that he was indicted thirty-three days after being released from state custody.  The government argued in its opposition to the motion that Mr. Melo-Medina was indicted "precisely" on the thirtieth day after he was taken into ICE custody.  See government's Opposition to Motion to Dismiss, p. 4.

alternative.  In many districts, a defendant facing an illegal reentry prosecution may plead to lesser

charges that cap the defendant's jail term.  The District of Arizona, the Central District of

California and the Western District of Washington all have fast track programs, for instance, that

provide for a defendant with a prior aggravated felony to have his prison term capped at either 24

or 30 months.[7]  Because the  District of Massachusetts does not have such a program, these

sentence reductions were not available to Mr. Melo-Medina.

In sum, because Mr. Melo-Medina has served "hard time" for thirteen months at

Plymouth, because the government waited three years to indict him while he served a state

sentence, and because he does not have the benefit of a fast-track program, thirteen months is a

fair sentence in this case and satisfies the criteria set out in 18 U.S.C. § 3553 (a).

III.  <u>Conclusion</u>

For the reasons set out in part I, above, Mr. Melo-Medina asks this Court to find that the

maximum sentence he can receive is two years.  For the reasons set out in parts II and III, he asks

the Court to sentence him to thirteen months.

GREGORIO MELO-MEDINA
By his attorney,
/s/ Page Kelley
Page Kelley
  B.B.O. #548237
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061

Date: September 7, 2005

---

[7]Counsel's information about fast track programs comes from the sharing of information among Federal Defender Offices: it is based on the reports of the Federal Defender Offices in the mentioned judicial districts.

13