1          UNITED STATES DISTRICT COURT

2        FOR THE DISTRICT OF MASSACHUSETTS

3

4

5   UNITED STATES            )   CR. NO. 04-10236-NG

6   VS.                      )   COURTROOM NO. 2

7   GREGORIO MELO-MEDINA     )   1 COURTHOUSE WAY

8                                BOSTON, MA  02210

9

10        FINDINGS OF FACT AND SENTENCING

11

12            SEPTEMBER 15, 2005

13               3:10 A.M.

14

15

16

17

18     BEFORE THE HONORABLE NANCY GERTNER

19     UNITED STATES DISTRICT COURT JUDGE

20

21

22

23

24          VALERIE A. O'HARA

25        OFFICIAL COURT REPORTER

1    A P P E A R A N C E S:

2        United States Attorney's Office, by CHRISTOPHER F.
     BATOR, ASSISTANT UNITED STATES ATTORNEY, One Courthouse Way,
3    Suite 9200, Boston, Massachusetts  02210, for the
     United States;

4
         Public Defender's Office, by PAGE KELLEY, ATTORNEY, 408
5    Atlantic Avenue, Boston, Massachusetts  02110, for the
     Defendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>FINDINGS OF FACT AND SENTENCING</u>

THE COURT:  You can be seated.  I am going to adopt your recommendation.  I'm going to adopt the defendant's recommendation for several reasons.  Let me start off by saying that I adopt the fact-findings in the presentence report except the fact-findings with respect to the prior conviction because or at least I do that in a contingent way.

I think the law with respect to Almendarez-Torres is tremendously confusing.  It's slightly different than the Malouf case because in Malouf I was dealing with U.S. v. Harris about which the First Circuit had not really spoken, whereas there is this way, in which all the courts are entoning until the Supreme Court reverses it, this is still good law, so I feel much less comfortable with respect to Almendarez-Torres than I did with respect to Harris, but I do think that that is tremendously vulnerable.

I think it's a moot point in this case because I'm going to sentence under two years, so it's really a moot point.  I think the sentence is justified, even assuming the facts in the presentence report, Almendarez-Torres was still good law, and assuming the fact in the presentence report because this really is an extraordinary psychological evaluation.

I don't think I have seen one like this in an

1   illegal entry after deportation case because typically these

2   are the cases in which you don't have this kind of

3   information about the person.  The presentence report is

4   never completely complete, not through any of the fault of

5   probation officers, just because we don't have information.

6   This is information which cries out for a departure, a

7   downward departure on diminished capacity grounds, and I

8   just want to put in the record what's already in your

9   submissions.

10          Mr. Melo-Medina was born in Santo Domingo.  He

11  didn't know his mother.  She and his father were separated

12  shortly after he was born.  His mother decided she could not

13  raise him.  He was the youngest of numerous aunts and uncles

14  whom he believed were his siblings.  There were reports of

15  his being mistreated on a daily basis, harsh physical

16  punishment, ridicule, daily beatings with a machete handle,

17  hit by his grandfather, his siblings, aunts and uncles, the

18  family was quite poor.  Suddenly he was visited by his

19  mother whom he had been told never loved him and gave him

20  away.

21          When his grandmother died in 1983, he was so upset

22  that he attempted suicide by driving his motorcycle into

23  another car and remained in the hospital for long periods of

24  time.  He immigrates to the United States and meets

25  Ms. Roche Alvores, who is in the courtroom, right?

1          MS. KELLEY:  Yes, your Honor.

2          THE COURT:  Yes.  They have two children and

3    Mr. Melo-Medina also has two additional children in the

4    Dominican Republic.  Clearly he's in the United States from

5    1988 to roughly 1992, '93; is that right?

6          MS. KELLEY:  That's correct.

7          THE COURT:  When there is an allegation which he

8    contests which is the predicate offense in this case.  In

9    any event, he is deported back to the Dominican Republic,

10   and the diminished capacity comes in in the description of

11   the fact that Ms. Alvores and her son felt compelled to go

12   back and forth into the United States to work and then to

13   return to the United States because there was not enough

14   money in the Dominican Republic, and what Ms. Kelley

15   described is that Ms. Alvores was so worried that her

16   husband was not eating and not sleeping and having little

17   contact with others, according to the information she

18   received, she convinced one of his relatives about speaking

19   to him about seeing a psychiatrist.

20          He seemed suicidal and shows up on her doorstep.

21   The fact that he leaves two children in the Dominican

22   Republic, you can go in two directions, on the one hand, it

23   could suggest that he was a callous human who left his

24   children, and on the other hand, it could suggest exactly

25   how diminished his capacity was.

1        There are circumstances here concerning the timing

2    of these charges, while no fault of the government's, they

3    certainly are unfair to the defendant.  It is unfair that

4    there are fasttrack systems in some parts of the country and

5    not others.  It is unfair that the indictment here takes

6    place simply because he wound up being ill before he could

7    get on a plane to leave.

8        All of those factors, principally the diminished

9    capacity factors, which are documented, which are

10    documented, as I said, it's really unusual that it's

11    documented, not because people in these situations are not

12    sometimes suffering from psychiatric problems, but because

13    we rarely know, and I'm going to conclude, as did Dr. Ayoub,

14    Mr. Melo-Medina is in dire need of treatment for his

15    depression because of the severity and chronicity of his

16    symptoms, psychopharmacological intervention is critical.

17    He should have an evaluation by a knowledgeable psychiatrist

18    and be placed on anti-depressants as soon as possible.

19    Because of the obvious longevity of this depression, he may

20    need to try several different types of medication.

21        If this could be done while he's at the controlled

22    environment of the Plymouth Correctional Facility, it would

23    be to his great advantage.  I will make a finding that it

24    will not be done in the controlled environment of the

25    Plymouth Correctional facility.  I have today signed an

1    order in another case getting Plymouth to give diabetes

2    medicine to a diabetic.  Under the circumstances, both

3    frankly to avoid a constitutional problem, which I think

4    would occur, given the facts of this case and because it's

5    justified on the fact, I will sentence Mr. Melo-Medina to

6    time served.

7            Would you please stand.  I have to read all of

8    this.  Even though for all intents and purposes you will be

9    released into ICE custody as soon as possible, I have to go

10    through all of this.

11            I'm going to sentence you to time served.  Upon

12    your release from imprisonment, you're to be placed upon

13    supervised release for two years.  For all intents and

14    purposes, however, you will be deported.  I have to read

15    this to you, in any event.  Supervised release for two

16    years.  During supervised release, you're not to commit

17    another federal, state or local crime and should not

18    illegally possess a controlled substance.

19            The drug testing requirements are the usual drug

20    testing requirements, which again only if you are delayed,

21    104 tests per year, you should submit to the collection of a

22    DNA sample as directed by probation, comply with the

23    standard conditions, prohibited from possessing a firearm,

24    destructive device or other dangerous weapon.

25            You are to participate in a mental health

1    treatment program, to which you will be required to

2    contribute based on your ability to pay or the availability

3    of third-party payment.  You're to leave the United States,

4    and if ordered deported, as you plainly will be, you're not

5    to return without the prior permission of the Secretary of

6    the Department of Homeland Security.  You are to use your

7    true name and you're prohibited from using aliases.  You

8    shall pay a special assessment of $100 which shall be due

9    immediately.

10         I'll ask that the psychological evaluation, Jen,

11   be sealed but nevertheless made a part, if that can be done.

12   The judgment of commitment would explicitly refer to the

13   psychological evaluation which shall be sealed and that the

14   transcript in this case be made a part of the judgment in

15   commitment so that my reasons are clear and on the record.

16         You have a right to appeal.  Your counsel will let

17   you know what that consists of.  Looking around the room at

18   your family, you have a great deal to live for.  You're a

19   young man still.  You have a life that you can start afresh.

20   I agree with Mr. Bator that your past is not great.  The

21   record is not a good record, but it appears from Dr. Ayoub's

22   findings at least that you have never addressed the

23   underlying conditions, the underlying circumstances, a

24   horrible background that you have, and, hopefully, if you

25   immediately return to the Dominican Republic, you will have

1  an incentive to right that, to do something about it.  So

2  you have a right to appeal.

3                          - - - -

4

5

6

7  UNITED STATES DISTRICT COURT )

8  DISTRICT OF MASSACHUSETTS    )

9  CITY OF BOSTON               )

10         I, Valerie A. O'Hara, Registered Professional

11  Reporter, do hereby certify that the foregoing transcript

12  was recorded by me stenographically at the time and place

13  aforesaid in No. 04-10236-NG, In Re:  United States vs.

14  Gregorio Melo-Medina and thereafter by me reduced to

15  typewriting and is a true and accurate record of the

16  proceedings.

17         In witness whereof, I have hereunto set my hand

18  this _____ day of _____, 2005.

19                          _____

20                          VALERIE A. O'HARA

21                          REGISTERED PROFESSIONAL REPORTER

22

23

24

25